OPP
Anthony D. Lauria
Nevada Bar No.:   4114
Robert B. Smith
Nevada Bar No.:   9693
Kimberly L. Cordano
Nevada Bar No.:   10554
**LAURIA TOKUNAGA GATES & LINN, LLP**
601 South Seventh Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 387-8633; Fax: (702) 387-8635
Attorneys for Defendant **McKESSON CORPORATION**

UNITED STATE DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KATHLEEN SHINN and RICHARD SHINN, Individually, as Heirs and as Personal Co-Administrators of the Estate of ALYSSA SHINN, Deceased,<br><br>Plaintiffs,<br><br>v.<br><br>BAXA CORPORATION; McKESSON CORPORATION, a Delaware Corporation; DOES 1 through 50, and ROE CORPORATIONS 1 through 20,<br><br>Defendants. | CASE NO.   :   2:07-CV-01648-JCM-PAL<br><br>**OPPOSITION OF DEFENDANT McKESSON CORPORATION TO SUMMERLIN HOSPITAL'S MOTION FOR GOOD FAITH DETERMINATION** |

COMES NOW DEFENDANT MCKESSON CORPORATION, by and through its counsel of record Lauria Tokunaga Gates & Linn, LLP, and hereby opposes the Motion for Determination of Good Faith Settlement as follows:

I

**FACTUAL BACKGROUND**

This case arises out of an alleged improper dosage of medication being given to Alyssa Shinn on November 8, 2006. Alyssa Shinn was born on October 19, 2006, at Summerlin Hospital in Las Vegas, Nevada. Alyssa was born premature, at 26 weeks and weighing one pound four ounces. Following her birth Alyssa Shinn's nutrition was provided intravenously through Total Parental Nutrition (TPN). One of the ingredients of the TPN was Zinc. During the evening of November 8, 2006, a pharmacist received an order to prepare Alyssa Shinn's TPN bag. The order contained a dosage of Zinc to equal 330

mcg/100ml.  The pharmacist, Pamela Goff,  who prepared the order, accidently selected milligrams, instead of micrograms, of Zinc per deciliter from the Baxa Compounder's drop down menu.  Due to the accident on the part of Ms. Goff, Alyssa Shinn was given a dosage of Zinc which was a 1000 times the actual dose of Zinc to be given to Alyssa Shinn.  Several hours after the drip had begun the hospital staff realized the dosage of Zinc given to Alysssa Shinn was inaccurate and took measures in an attempt to counteract the Zinc overdose.  The efforts of the hospital to counteract the Zinc overdose failed.  On November 9, 2006, Alyssa Shinn, died as a result of a Zinc overdose.

McKesson Corporation (hereinafter McKesson)  operated the Summerlin Hospital from June 4, 2002 to July 1, 2006.  On March 31, 2006, correspondence was sent by UHS/Summerlin Hospital to McKesson informing McKesson that it was exercising its right to terminate the Pharmaceutical Services Agreement pursuant to Section 4.2(e).  On May 31, 2006, a letter was sent by McKesson to UHS/Summerlin Hospital confirming the termination of the agreement and informing UHS/Summerlin Hospital that  July 1, 2006 would be the last day McKesson would be operating the pharmacy at Summerlin Hospital.  UHS in terminating the above reference agreement ended its relationship with McKesson, which was operating the pharmacies at 26 different hospitals across the country.

Thus, at the time of the incident involving Alyssa Shinn,  McKesson had not operated the pharmacy at Summerlin Hospital for over four months.  Additionally, at the time of the incident at issue in this matter the pharmacy was being operated by Summerlin Hospital's own staff and employees.  Further, records produced by Summerlin Hospital establish that the BAXA Compounder used by Summerlin's pharmacy staff to complete Alyssa Shinn's prescription was leased directly from BAXA by Summerlin, that the software on the Compounder had been changed since McKesson had stopped providing pharmacy services, and Summerlin Hospital's pharmacy staff.   Although McKesson had no involvement in the Summerlin Hospital pharmacy at the time of the admitted medication error by Summerlin's employees and never had any ownership or lease interest in the BAXA Compounder used by Summerlin's staff to fill this prescription order, McKesson has been made a party to litigation by the parents of decedent child Alyssa Shinn.

/ / / / /

## II

## ARGUMENT

It has been held that the factors to be examined by the Court in determining whether or not a settlement is in good faith are as follows:

> "Factors to be considered by the Court in assessing whether a settlement is in good faith is [sic] the amount paid in settlement, the allocation of the settlement proceeds among plaintiffs, the insurance policy limits of settling defendants, the financial condition of settling defendants, and the existence of collusion, fraud or tortious conduct aimed to injure the interests of non-settling defendants."
> (Velsicol Chem. Corp. v. Davidson, 107 Nev. 356, 359, (1991) citing Re MGM Grand Hotel Fire Litigation, 570 F.Supp. 913, 927 (D.Nev. 1983).)

Summerlin Hospital has provided essentially none of the above information to permit this Court to make a reasonable and informed determination regarding a prior settlement with plaintiffs. Nothing in the Motion sets forth the amount of the settlement, the allocation of proceeds, the insurance limits or available assets of Summerlin, or any other information pertaining to the settlement. It has further been held that the determination of the reasonableness of the settlement must be "based upon all relevant facts available" to the Court at the time the determination is sought. (Veliscol, supra, at 360.) At the present time, Summerlin Hospital has presented essentially no facts to support its Motion.

Summerlin Hospital bears primary, if not total, responsibility for this medication error, has admitted such before the Nevada Board of Pharmacy, and has apparently settled the claims made by the Shinn family prior to litigation. Obviously, the amount of any settlement by Summerlin Hospital is critical information for the defendants in the present action and defendants are clearly entitled to this information for set-off purposes. In fact, since it appears that Summerlin Hospital bears essentially 100% of the potential liability for this medication error, it is unjust to permit any settlement by Summerlin to be permitted to extinguish the rights of defendants in this action to total equitable indemnity for any potential judgment or recovery by the Shinn family related to the death of this child. Defendants should be permitted to seek such indemnity from Summerlin in the interests of fundamental fairness.

/ / / / /

At a minimum, the amount of any settlement monies paid by Summerlin Hospital should be made known to Defendants and any determination of "good faith" should be postponed until the precise factual scenario surrounding this event is further clarified through discovery, which has just begun in this action. McKesson, which had no involvement whatsoever in the medication error, which led to the death of this child, respectfully submits that the Motion for Determination of Good Faith Settlement, the primary effect of which is to eliminate the Defendants' rights to indemnity, should be denied at this time.

DATED:  April 3, 2008.	LAURIA TOKUNAGA GATES & LINN, LLP

*/s/ Anthony D. Lauria*

Anthony D. Lauria
Nevada Bar No.:   4114
Kimberly L. Cordano
Nevada Bar No.:   10554
Robert B. Smith
Nevada Bar No.:   9693
601 S. Seventh Street, 2nd Floor
Las Vegas, Nevada 89101
(702) 387-8633
Attorneys for Defendant McKESSON CORPORATION

## CERTIFICATE OF SERVICE

Pursuant to F.R.C.P. 5(b), I hereby certify that the foregoing **OPPOSITION OF DEFENDANT McKESSON CORPORATION TO SUMMERLIN HOSPITAL'S MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION** was served by mailing a copy first class mail, postage prepaid, on the 3rd day of April 2008, addressed as follows:

Richard A. Harris, Esq.
Kerry L. Earley, Esq.
Richard Harris Law Firm
801 South Fourth Street
Las Vegas, Nevada 89101
Attorneys for Plaintiffs

Nicholas M. Wieczorek, Esq.
Morris Polich & Purdy
3930 Howard Hughes Parkway, Suite 360
Las Vegas, Nevada 89169
Attorneys for Defendant BAXA CORPORATION

Michael E. Prangle, Esq.
Kenneth M. Webster, Esq.
Hall Prangle & Schoonveld, LLC
777 North Rainbow Boulevard, Suite 225
Las Vegas, Nevada 89107
Attorneys for SUMMERLIN HOSPITAL

*/s/ Carrie C. Taylor*

CARRIE C. TAYLOR, an employee of
Lauria Tokunaka Gates & Linn