KENNETH M. WEBSTER, ESQ.
Nevada Bar No. 7205
HALL PRANGLE & SCHOONVELD, LLC
777 North Rainbow Blvd., Suite 225
Las Vegas, Nevada, 89107
*(702) 889-6400 - Office*
*(702) 384-6025 - Facsimile*
*Attorneys for Summerlin Hospital*

UNITED STATES DISTRICT COURT,

DISTRICT OF NEVADA

| | |
|---|---|
| KATHLEEN SHINN and RICHARD SHINN, Individually, as Heirs and as Personal Co-Administrators of the Estate of ALYSSA SHINN, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>BAXA CORPORATION; MCKESSON CORPORATION, a Delaware Corporation; DOES 1 through 50, and ROE CORPORATIONS 1 through 20; | Case No.: 2:07-CV-01648-JCM-PAL<br><br>**SUMMERLIN HOSPITAL MEDICAL CENTER'S REPLY IN SUPPORT OF ITS MOTION TO INTERVENE AND FOR DETERMINATION OF GOOD FAITH SETTLEMENT** |

COMES NOW SUMMERLIN HOSPITAL MEDICAL CENTER, LLC, d/b/a SUMMERLIN HOSPITAL MEDICAL CENTER (hereinafter referred to as "Summerlin Hospital"), by and through its counsel of record, of the law firm of HALL PRANGLE & SCHOONVELD, and submits the following Reply in support of its Motion to Intervene and simultaneously an Order Granting Good Faith Settlement between Summerlin Hospital and Plaintiffs for the settlement reached between Plaintiffs and Summerlin Hospital.

. . .

. . .

. . .

1    This Reply is based on the following Points and Authorities, the pleadings and papers on

2    file herein, and the arguments of counsel at the time of hearing of this matter.

3    DATED this **30ᵗʰ** day of May, 2008.

4

5                                              HALL PRANGLE & SCHOONVELD, LLC

6                                              KENNETH M. WEBSTER, ESQ.

7                                              Nevada Bar No. 7205
                                               HALL PRANGLE & SCHOONVELD, LLC
8                                              777 North Rainbow Blvd., Suite 225
                                               Las Vegas, NV 89107
9                                              *Attorneys for Summerlin Hospital*

10                                **POINTS AND AUTHORITIES**

11                                               **I.**

12

13   **RESPONSE TO THE "OPENING SUMMARY OF ARGUMENT" ADVANCED BY
     BAXA IN ITS RESPONSE IN OPPOSITION BRIEF**

14

15          Baxa attempts to portray the settlement agreement reached between Summerlin Hospital

16   and the Shinn family as something akin to a backroom deal allowing Summerlin to walk away

17   from this tragic event in an effort to "wish away" the facts of this case.  Baxa further alludes to

18   the possibility that the settlement agreement reached between Summerlin and the Shinn family

19   was in someway collusive, fraudulent or tortious conduct aimed to injure the interests of Baxa.

20   Nothing could be further from the truth.  It strains credulity for Baxa to argue that the Shinns

21   would work "in league" with Summerlin Hospital for any purpose, let alone to injure the

22   interests of Baxa.  The settlement agreement in this matter was made confidential because of the

23   extensive media attention this case received as well as the Shinn's desire to work as patient

24   safety advocates by discussing their case with national media outlets.  Coverage of this case on

25   Nightline and in national print media has exposed the facts of this case and Summerlin

26   Hospital's role in this case to national media and public scrutiny.  The settlement amount was

27

28

made confidential so as not to arbitrarily increase settlement demands against Summerlin Hospital or increase the number of claims levied against that facility.

Baxa's opposition does correctly document difficulties Summerlin has encountered when responding to the subpoena for records served by Baxa. As the parties and this Honorable Court may well imagine, the number of investigators, reviewers and changes in policy, personnel and practice at Summerlin Hospital has resulted in a wide scattering of documents regarding this incident to the numerous committees and individuals reviewing this issue and auditing Summerlin Hospital's performance. We continue to request and collect relevant documents to comply with Baxa's extensive request for information. Certain items were discarded and we are attempting to find alternative sources for that information. Specifically, certain policies, guidelines and training manuals for the prior compounding equipment used by Summerlin Hospital was removed from the Hospital in order to avoid any confusion in the future or replication of the horribly tragic events of this case. Summerlin recognizes the granting of this Motion does not absolve its continuing obligations under the subpoena issued by Baxa. (See Affidavit of Kenneth M. Webster, attached as Exhibit A).

Despite the difficulty encountered by Summerlin Hospital, Baxa as well as this Honorable Court has before them substantial and complete information regarding the factual issues underlying the claim in this case. Baxa's Response in Opposition to the instant Motion recounts in excruciatingly minute detail the minute-to-minute actions which resulted in the unfortunate and tragic death of Alyssa Shinn. Baxa was able to devote nearly 4 pages of their Response to the detailed facts underlying the Shinn's claim against Summerlin Hospital. Moreover, Baxa attached the 16 pages of Finding of Fact and Conclusions of Law from the Pharmacy Board's investigation into this matter. The material therein was gleaned from

Pharmacy Board investigator interviews, and live testimony taken from each of the named individuals from Summerlin Hospital at a public hearing – much of which was aired on local television and portions of which have been rebroadcast through national media outlets.   In addition, Baxa was provided a copy of the final report from "Your Success RX", the independent review organization appointed by the Nevada Pharmacy Board to investigate the condition and integrity of the Summerlin pharmacy following this incident.  (See Client Board Report from Your Success RX Consulting, attached as Exhibit B).

Baxa correctly indicated that it had not yet had an opportunity to review the Confidential Settlement Agreement in this case prior to filing its Response.  In compliance with the May 20, 2008, Order of this Honorable Court, Summerlin Hospital entered in a Stipulated Confidentiality Agreement to Protect Confidential Information with the remaining parties to this action – the Shinns and Baxa.   On May 27, 2008, all parties were served a copy of the Stipulated Confidentiality Agreement as well as the Confidential Settlement Agreement.  (See Exhibit C, May 27, 2008, correspondence from Ken Webster to counsel and Stipulated Confidentiality Agreement).   The Confidential Settlement Agreement is being filed under seal simultaneously with this Reply for the Honorable Court's review.

At this early stage of the Shinn's litigation against Baxa, more is known by all parties to this action about Summerlin Hospital's role and short comings in this action than in most any other case.  It is difficult to imagine what additional materials would be necessary for either Baxa or this Honorable Court to review in order to obtain a fuller understanding of the exact facts which occurred at Summerlin Hospital prior to the death of Alyssa Shinn.  Based upon the fecundity of material made available, there exists ample ground for this Honorable Court to

make a determination that the settlement agreement between Summerlin and the Shinns was reached in good faith.

**II.**

**ARGUMENT**

**B.    THE SETTLEMENT BETWEEN PLAINTIFFS AND SUMMERLIN HOSPITAL WAS MADE IN GOOD FAITH**

Based upon the Response filed by Baxa, the parties agree that the MGM factors are those to which this Honorable Court may look to determine whether a settlement was made in good faith.  Importantly, the Court is vested with significant discretion when considering the fairness and overall appropriateness of the proposed settlement.  *See* Duk v. MGM Grand Hotel, Inc., 320- F.3d 1052, 1060-101 (9th Cir. 2003); *see also* The Doctors Co. v. Vincent, 120 Nev. 644, 98 p.3d 681 (2004), (the trial court could consider the MGM factors with considerable discretion).

The discretion afforded the Court in this matter is important, especially in light of the damage caps applicable to the medical malpractice the Shinns could have filed against Summerlin Hospital.  The events at issue in this case occurred on November 9, 2006.  As such, it is governed by NRS 41A.035 which provides, "In an action for injury or death against a provider of health care based upon professional negligence, the inquired plaintiff may recover noneconomic damages, but the amount of noneconomic damages awarded in such an action must not exceed $350,000."  Given the fact that the Shinn's recovery against Summerlin Hospital was limited to economic damages (loss of probable economic support to the family) and the $350,000 cap in noneconimic damages, the financial integrity and insurance policy limits of the settling defendant are of significantly less importance. The potential damage exposure in this case is limited by statute.  Baxa argues that not all possible claims the Shinn's could have alleged against Summerlin would have been capped (e.g., negligent hiring training and supervision).

With respect to the specific language of NRS 41A.035, Baxa's argument is untenable.   The statute specifically addresses liability for injury or death against a provider of health care based upon "professional negligence".   The hiring, training and supervision of employees would be subject to claims of professional negligence, and arguably subject to the statutory damage cap. Unfortunately, the damage cap remains untested and there is no interpretation offered for this provision.   Despite that potential argument, the amount paid by Summerlin to settle this claim, clearly took into account the potential for un-capped claims, including the possibility of punitive relief.   The amount of the settlement, in comparison to the damage cap, provides an almost *per se* basis for making a determination that the settlement was reached in good faith.

There were only two potential plaintiffs in the underlying case; Richard and Kathleen Shinn, the parents of the deceased child.   The Settlement Agreement in this case indicates each had an equal share in the entire settlement amount.   With respect to allocation between economic and/or noneconimic as well as future and/or past damages, given the facts of the case and the immediacy with which it was settled, no allocation was necessary in the Settlement Agreement. Moreover, Plaintiffs Joined Summerlin's instant Motion.

The applicable insurance limits and the financial assets of the settling defendant are not factors of significance in this case given the statutory limit on damages.   Further, the amount in settlement, as related to those damage caps, indicates that the financial strength of Summerlin Hospital  was taken into account.   Summerlin does not dispute that the parties are entitled to the production of insurance information in this case.   That material was requested, but for reasons unknown to counsel undersigned, the actual documents have not yet been provided.   Based upon information and belief, it is counsel's understanding that Summerlin Hospital was self-insured for $1 million during this policy period.   It is believed that excess insurance was likely available,

however, an amount of coverage from possible excess carriers has not been confirmed as of the filing of this document. Summerlin will supplement the information to the Court when it becomes available, if the Honorable Court so orders. As noted above, the absence of that information regarding excess coverage does not foreclose a finding of a good faith settlement in this case in light of the damage caps and the amount paid in settlement.

**III.**
**CONCLUSION**

Based upon the forgoing, Summerlin Hospital respectfully requests its Motion to Intervene and Motion for Determination of Good Faith Settlement be granted and any and all claims for contribution and/or indemnity be forever barred.

DATED this **30th** day of May, 2008.

HALL PRANGLE & SCHOONVELD, LLC

KENNETH M. WEBSTER, ESQ.
Nevada Bar No. 7205
HALL PRANGLE & SCHOONVELD, LLC
777 North Rainbow Blvd., Suite 225
Las Vegas, NV 89107
*Attorneys for Summerlin Hospital*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _____30_____ day of May, 2008 a true and correct copy of the foregoing SUMMERLIN HOSPITAL MEDICAL CENTER, LLC, d/b/a SUMMERLIN HOSPITAL MEDICAL CENTER'S REPLY IN SUPPORT OF ITS MOTION TO INTERVENE AND MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT  was served via U.S. First-Class Mail, postage prepaid, addressed as follows:

Kerry L. Earley, Esq.
RICHARD HARRIS LAW FIRM
801 S. 4th St.
Las Vegas, NV  89101
*Counsel for Plaintiffs*

Nicholas M. Wieczorek, Esq.
MORRIS POLICH & PURDY, LLP
3930 Howard Hughes Pkwy, Ste. 360
Las Vegas, NV  89169
*Counsel for Defendant Baxa*


_____
An Employee of Hall Prangle & Schoonveld

EXHIBIT ___A___

**AFFIDAVIT OF KENNETH M. WEBSTER, ESQ. IN SUPPORT OF
SUMMELRIN HOSPITAL'S REPLY IN SUPPORT OF ITS MOTOIN TO
INTERVENT AND MOTION FOR DETERMINATION OF GOOD FAITH
SETTLEMENT**

**STATE OF NEVADA**      )
                       )     **SS**
**COUNTY OF CLARK**     )

       KENNETH M. WEBSTER, ESQ., being first duly sworn, deposes and states:

1.      Your Affiant is an attorney licensed to practice law in the State of Nevada and is a partner in the law firm of Hall Prangle & Schoonveld, LLC, counsel of record for Summerlin Hospital in the above-entitled matter.

2.      The information contained in this affidavit is based upon actual knowledge, or upon good faith belief after inquiry regarding those issues.

3.      That since the tragic events leading to the death of Alyssa Shinn while a patient at Summerlin Hospital, Summerlin Hospital, its pharmacy and nursing organization have undergone extensive evaluation, investigation and auditing. Since this event, no fewer than 8 investigations, assessment or audits were conducted at Summerlin Hospital regarding this incident.

4.      As part of those investigations, documents, materials and other items regarding this issue have been spread throughout many individuals and committees within Summerlin Hospital as well as independent investigating bodies.

5.      In addition to the number of audits and reviews conducted at Summerlin Hospital, numerous policy revisions have occurred, new equipment was purchased and several key staff positions have been replaced with new personnel.

6.      The foregoing factors have made it difficult to collect documents responsive to the subpoena for information served by Baxa.

7.      Your Affiant continues to work with Summerlin Hospital to obtain materials responsive to the Baxa subpoena.  Your Affiant and Summerlin Hospital further understand that should this Honorable Court grant the instant motion, the obligations to comply with Baxa's subpoena continue.

8.      Based upon information and belief, Summerlin Hospital was self-insured for $1 million during the time of this event.  It is believed that excess coverage was likely available during that time.  Unfortunately, that fact, and any potential coverage in excess of the self-insured amount, has not been confirmed as of the filing of this document. Your Affiant continues to seek that information and will produce same as required by this Honorable Court.

9.      Everything stated within this affidavit is true and correct to the best of Your Affiant's knowledge, information and belief.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

KENNETH M. WEBSTER

SUBSCRIBED and SWORN to
before me on this 30 day of May, 2008.

NOTARY PUBLIC in and for said
County and State

Notary Public - State of Nevada
County of Clark
TAMIE PHILLIPS
My Appointment Expires
No: 03-84280-1    September 10, 2011

EXHIBIT   B

# Your Success RX Consulting
## Katie Johnson, RPh, MA
Consultant/Pharmacist

# Client Board Report

CONFIDENTIALITY NOTICE: This document, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact return the docment and destroy all copies.

1

# Your Success RX Consulting
## Katie Johnson, RPh, MA
Consultant/Pharmacist

# Client Board Report

**Client Name:**   Summerlin Hospital

**Date of Remedial Training:**      December, 2007

**Preparation Process:**

The following documents were reviewed prior to the Summerlin Hospital survey:

- Pharmacy Policy and Procedure Manual
- Nursing Policy and Procedure relating to:  Medication and Pharmacy, IV, Labor and Delivery and Code Team
- Human Resource Coaching Policy and Procedure with example of forms
- Baxa machine manual
- Internal Risk Assessment Report of incident
- TPN standards
- MD pharmacy order forms
- Orientation Policy and Forms
- Competency Training Policy and Forms
- Pyxis Protocols and Policy and Procedure
- Protocol for reporting and handling of misfilled prescriptions

2

The attached survey forms were created specific to the Summerlin Policy and Procedure and training documents. These forms were utilized during the site survey and interviews of current Summerlin employees.

## Site Visit:

Maribeth Volk, RN, MBA and I spent approximately 16 hours doing the on-site portion of Summerlin Hospital's survey. During this site visit we were given absolute and total access to all requested documents, all employees we asked to interview and any area of the hospital we wished to visit.

Upon our arrival we participated in a lunch meeting which included all top administrators, nursing administration, pharmacy administration and staff, physicians and risk management administration. During this meeting we discussed the details of the incident including the root/cause analysis, as well as, asked and answered questions about the survey. We were given a dedicated workspace and a tour of the pharmacy and hospital.

Over the next two days we proceeded to survey the pharmacy, IV room, pyxis units on the different floors, documents within the pharmacy and we interviewed staff by random selection. As stated above, at no time were we denied access to any of our requests.

## Assessment:

This was the eighth survey Summerlin had undergone since the incident had occurred, the first being a five person, four day survey by JCAHO. Therefore, we found the pharmacy and overall hospital to be in very good

order.  There were few requests that could not be met immediately and any others were provided within our visit.

At the time of our survey, Summerlin had recruited all new pharmacy administrators.  Our contact person was Willa Dixon, RN who was hired approximately six months ago as the Chief Nursing Office and administrator over the pharmacy.  Ms. Dixon has extensive background in nursing as well as preparing hospitals for JCAHO Surveys.  Ms. Dixon was given complete authority by the hospital to implement all necessary improvements.

Weeks before our survey, Steve McMillan, RPh, a new Director of Pharmacy was hired.  Mr. McMillan had worked as a pharmacy manager within the Universal Health Services organization at another Las Vegas hospital site.  He was present for the survey, as was Peter Aprato, PharmD who was the interim Director of Pharmacy.

Both Maribeth and I found Willa, Steve and Peter to be very professional, easy to work with and open to any suggestions that we provided throughout the survey.

## Site Recommendations:

It is obvious that with the hiring of some highly qualified professionals, who have been given the necessary autonomy; this institution has made significant changes in its operational delivery of pharmacy services.  These changes are reflected in all aspects including:  documentation, training, equipment, site conditions and employee interviews.  The implementation by Ms. Dixon of several "steering committees" and pharmacy/nursing monthly

4

meetings has addressed significant long-standing issues concerning communication between nursing and pharmacy.  Willa Dixon has shown herself to be a superior administrator for this hospital.  Furthermore, Steve McMillan presented himself to be a "hands on" leader who in a short time had already instilled a level of respect and confidence in all employees that were interviewed.

That being said, the following areas were identified for further focus:

- All prescriptions should contain hand written initials of the individual who was responsible for the preparation or filling
- A phone study is recommended to identify the volume and reason for phone calls on all shifts
  - This can be done with a simple tick sheet that identifies the number of calls, the reason for the call and whether the call was handled by a technician or a pharmacist
    - Currently none of the phone calls are screened for the pharmacists
    - The study could identify potential areas for further training of pharmacists, technicians or nursing staff.
    - It could also identify a lack of resources of different individuals who are calling the pharmacy for information
    - The need for a messaging center on the phone system could be identified
- Communication
  - Implementation of a specific system of communication within the pharmacy

5

- Chief complaint of current employees is lack of communication
- Summerlin has goal of implementing "intranet" communication system.  However, until that has occurred the pharmacy needs to employ something as basic as a "communication binder" to ensure that each and every pharmacy employee is aware of pertinent information on a day to day basis.

- Policy and Procedure manual maintenance
  - All new policies have good procedure included, however, polices written before new administration lack in procedure. Entire manual should be overhauled with the following focus
    - Formalized process for creation, implementation and updating of all manuals.
    - Formalized process for communication of updates to all employees
    - Removal of all outdated materials
    - Step by step procedure on all policy when possible
- Training, Knowledge and Assessment Document maintenance
  - Current training documents are a good start, however, they are a generalized template taken from APHA and they need to be made specific to the organization.
    - **Example**:  Current training documents define continuous quality improvement (CQI) for new pharmacists and technicians.  The document sites numerous ways of implementing CQI in an organization.  This needs to be taken further and made specific to THEIR organization.

6

New pharmacists and technicians should be told the exact CQI process at Summerlin and how they, as individuals, are expected to participate in the process.

- o Each and every employee should have personal access and step by step training of the Midas system (medication error reporting system used at Summerlin)
  - None of the employees interviewed had knowledge of the system. Many errors can be prevented BEFORE they occur if system is utilized and information communicated to all employees.
  - Midas data should be anonymously shared with ISMP on a regular basis
- Newsletter contribution and distribution maintenance
  - o Current newsletter is a good start; however, even some of the administrators were not clear on who contributes and how it is distributed.
    - Communication should include information about potential areas for misfills, ISMP monthly newsletters, Midas reporting information, etc. All employees should have access to the newsletters and opportunity to contribute when appropriate.
- Decentralization of pharmacy services
  - o Since the incident there has been decentralization of the Neonatal ICU pharmacy services. A long-term focus on further decentralization is encouraged

7

- Decentralization of pharmacy has been proven to provide a higher level of care at a lower cost to both patients and facilities.
- Decentralized pharmacy enhances communication and relations between nursing and pharmacy staff
- Decentralized pharmacy creates jobs that are highly desirable within the field of pharmacy, drawing the best and the brightest within the profession.

## Conclusion:

It is the opinion of both myself and Maribeth that Summerlin Hospital pharmacy is currently being run in an operationally sound manner. Addressing the recommendations listed above will help to "polish" all of the changes which have been made since the incident.  A second survey is scheduled for December, 2008 to evaluate the consistency of current changes and assess the implementation of above recommendations.

8

EXHIBIT C

**H P S** | **Hall Prangle** and **Schoonveld** LLC
Attorneys at Law

777 North Rainbow Boulevard, Suite 225
Las Vegas, Nevada 89107
P 702.889.6400
F 702.384.6025
www.hpslaw.com

KENNETH M. WEBSTER
DIRECT DIAL 702.212.1441
KWEBSTER@HPSLAW.COM

May 27, 2008

Nicholas M. Wieczorek, Esq.
MORRIS POLICH & PURDY, LLP
3930 Howard Hughes Pkwy, Ste. 360
Las Vegas, NV  89169

Kerry L. Earley, Esq.
Richard Harris Law Firm
801 S. Fourth St.
Las Vegas, NV  89101

   Re: Shinn v. Baxa

## CONFIDENTIAL INFORMATION CONTAINED HEREIN

Dear Mr. Counsel:

Enclosed is a copy of the fully executed Stipulated Confidentiality Agreement for the Protection of Confidential Information as well as the Settlement Agreement and Release between Shinns and Summerlin Hospital.

Should you have any further comments or questions regarding this matter, please do not hesitate to contact me.

Very truly yours,

HALL PRANGLE & SCHOONVELD, LLC

Kenneth M. Webster

KMW/trp
Encl. (as stated)

1 | KENNETH M. WEBSTER, ESQ.
Nevada Bar No. 7205
2 | HALL PRANGLE & SCHOONVELD, LLC
777 North Rainbow Blvd., Suite 225
3 | Las Vegas, Nevada, 89107
*(702) 889-6400 - Office*
4 | *Attorneys for Summerlin Hospital*

5

6 UNITED STATES DISTRICT COURT,

7 DISTRICT OF NEVADA

8 | KATHLEEN SHINN and RICHARD SHINN, | Case No.:  2:07-CV-01648-JCM-PAL
9 | Individually, as Heirs and as Personal Co-
Administrators of the Estate of ALYSSA | **STIPULATED CONFIDENTIALITY**
10 | SHINN, Deceased, | **AGREEMENT FOR THE PROTECTION OF CONFIDENTIAL INFORMATION**
11 | Plaintiff,
12 |
13 | vs.
14 | BAXA CORPORATION; MCKESSON
CORPORATION, a Delaware Corporation;
15 | DOES 1 through 50, and ROE
CORPORATIONS 1 through 20;
16 |
17 | Defendants

18

19 WHEREAS the parties hereto stipulate to the execution and entry of this Confidentiality

20 Agreement for the Protection of Confidential Information, and for Good Cause shown, IT IS

21 HEREBY AGREED that each of the parties to the above-entitled action and their counsel shall

22 be governed by the following terms and conditions concerning the Settlement Agreement and

23 Release by and between Plaintiffs KATHLEEN SHINN and RICHARD SHINN and

24 SUMMERLIN HOSPITAL MEDICAL CENTER.

25

26 NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED THAT:

27 1. This stipulation applies to the Settlement Agreement and Release entered

28 into by and between Plaintiffs KATHLEEN SHINN and RICHARD

-1-

SHINN and SUMMERLIN HOPSITAL MEDICAL CENTER, (hereinafter the "Release");

2.    The parties hereto agree that the Release will only be used in conjunction with the above-captioned matter, or any subsequent litigation involving the underling claim of the above-captioned action, including any appeal. The actual Release and/or its terms, will not be disclosed except in accordance with Paragraph 3 below;

3.    The Release shall not be disclosed to anyone for any purpose other than the following categories of persons:

a. The Court (including Courts of Review) and any person normally incident to the disclosure to the court, such as, but not limited to court reporters and/or clerks of the court. The party(ies) doing so, must disclose the document to the Court under seal.

b. The parties, their counsel of record, and counsel's support staff, including any attorneys or staff employed by or retained by the parties' counsel who are assisting with the litigation involving this claim.

c. Any third-party Mediator or Settlement Judge, including their support staff.

4.    The Release, prior to being produced to any person(s) identified under Paragraph 3 to this Stipulated Confidentiality Agreement for the Protection of Confidential Information, shall have the following language stamped on the face of the writing or shall otherwise have clearly marked:

**THIS CONFIDENTIAL DOCUMENT BELONGS TO SUMMERLIN HOSPITAL AND KATHLEEN AND RICHARD SHINN AND IS**

**PRODUCED PURSUANT TO A STIPULATED PROTECTIVE AGREEMENT AND ORDER IN THE SHINN v BAXA LITIGATION IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA, CASE NUMBER 2:07-CV-01648-JCM-PAL. THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION AND MAY ONLY BE USED, DISSEMINATED AND/OR REPRODUCED IN ACCORDANCE WITH THE TERMS OF THE STIPULATED PROTECIVE AGREEMENT AND ORDER**

5.   All parties, their counsel, paralegals and support staff receiving this Release shall take all steps reasonably necessary to prevent unauthorized disclosure of the Release other than in accordance with the terms stated herein;

6.   The disclosure of the Release other than in accordance with the terms of this Stipulated Confidentiality Agreement to Protect Confidential Information may subject the disclosing party to such sanctions and remedies as a Court of competent jurisdiction deems fit;

7.   If at any time for any reason a party wishes to dispute a disclosure of the Release, such party shall notify the parties of such dispute in writing, specifying the nature of the dispute. If the parties are unable to amicably resolve the dispute, the disputing party may apply by Motion to a Court of competent jurisdiction for ruling as to whether the Release may be properly treated as confidential and/or distributed to the disputed recipient(s);

8.        The terms of this Stipulated Confidentiality Agreement for the Protection of Confidential Information shall survive and remain in effect after the termination of the underlying Claim and any related litigation involving same;

9.        Within thirty (30) days of the termination of this Claim, and/or any related litigation, those in possession of the subject Release, and any copies thereof, shall return same to counsel for the producing party, or the parties may agree upon appropriate methods for the destruction of said documents;

IT IS SO STIPULATED.

RICHARD HARRIS LAW FIRM

Dated: 5-20-08

Kerry L. Earley, Esq.
801 S. 4th St.
Las Vegas, NV  89101
*Counsel for Plaintiffs*

MORRIS POLICH & PURDY, LLP

Dated: 5/23/08

Nicholas M. Wieczorek, Esq.
3930 Howard Hughes Pkwy, Ste. 360
Las Vegas, NV  89169
*Counsel for Defendant Baxa*

HALL PRANGLE & SCHOONVELD, LLC

Dated: 5/23/08

Kenneth M. Webster, Esq.
777 North Rainbow Blvd., Suite 225
Las Vegas, NV 89107
*Attorneys for Summerlin Hospital*