1

2

3

4

**UNITED STATES DISTRICT COURT**

5

**DISTRICT OF NEVADA**

6

7  KATHLEEN SHINN, et al.,                          )
                                                    )
8                          Plaintiffs,              )      Case No. 2:07-cv-01648-JCM-PAL
                                                    )
9  vs.                                              )      **ORDER**
                                                    )
10 BAXA CORPORATION, et al.,                        )      (M/Intervene - #23)
                                                    )
11                         Defendants.              )
   _____)

12

13     The court conducted a hearing on Summerlin Hospital Medical Center's Motion to Intervene

14 and For Determination of Good Faith Settlement (#23) on July 1, 2008.  Kerry L. Earley, Esq., appeared

15 on behalf of the plaintiffs; Nicholas Wieczorek, Esq., appeared on behalf of defendant Baxa; and Ken

16 Webster, Esq., appeared on behalf of the movant, Summerlin Hospital.  The court considered the

17 motion, the Opposition of defendant McKesson (#24)[1], defendant Baxa's Response (#39), Plaintiffs'

18 Joinders (##40, 48), Summerlin's Memorandum of Good Cause (#43), Baxa Corporation's

19 Supplemental Response (#46), Summerlin's Supplement (#47), and the arguments of counsel at the

20 hearing.

21                                   **BACKGROUND**

22     This a wrongful death action arising out of the death plaintiffs' infant who was born October 19,

23 2006 and treated at Summerlin Hospital.  Baby Alyssa died at Summerlin Hospital on November 9,

24 2006.  The infant was administered a lethal dose of zinc intravenously through a Total Parental

25 Nutrition ("TPN") which provided her nutrition.  Plaintiffs assert their child received 1000 times the

26 / / /

27

28

     [1]  On April 17, 2007, the District Judge approved a stipulation dismissing McKesson Corporation
   with prejudice (#17).

1    appropriate dose and was slowly poisoned to death.  Her death and the circumstances which caused it

2    received intense public scrutiny and publicity.

3         The Nevada State Board of Pharmacy conducted public hearings and took testimony from

4    Pamela Goff, Nazanin Rezvan, Asia Cornelius, Jackson Yu, and Gretta Woodington, Summerlin

5    Hospital employees who were involved in processing and administering the doctor's order for the zinc.

6    The State Board's hearings were widely publicized, and portions of the hearings were televised live.  At

7    the conclusion of the hearings, the Pharmacy Board made findings of fact and conclusions of law,

8    finding that Ms. Goff, Ms. Cornelius, Ms. Rezvan, and Mr. Yu had violated certain provisions of the

9    Nevada Revised Statutes and the Nevada Administrative Code.  The Board also found the Summerlin

10   Pharmacy violated Nevada Revised Statute and Nevada Administrative Code in establishing and

11   enforcing the policies and procedures and in owning and operating the pharmacy in which all of the

12   Board's factual allegations and legal violations occurred.  (See Findings of Fact and Conclusions of

13   Law of the Nevada State Board of Pharmacy, attached as exhibit "A" to Baxa's Response (#39)).

14        Plaintiffs sued defendant Baxa in this lawsuit asserting it developed, researched, designed,

15   manufactured, and supplied the compounding device and related component software which delivered

16   the lethal dose of zinc to the plaintiffs' infant, Alyssa Shinn.  Plaintiffs reached a confidential

17   settlement with Summerlin Hospital prior to filing this lawsuit.  Summerlin seeks to intervene for the

18   limited purpose of obtaining a determination that its settlement with the plaintiffs was entered in good

19   faith for purposes of extinguishing contribution and equitable indemnity claims pursuant to the

20   provisions of N.R.S. 17.245.

21        Summerlin Hospital refused to produce a copy of its Settlement Agreement with the plaintiffs to

22   counsel for Baxa, and counsel for Baxa, therefore, sought the court's assistance in compelling a copy of

23   the Agreement.  Counsel for Baxa indicated that the defendant may or may not have an opposition to

24   the motion by Summerlin Hospital, but was unable to evaluate its options without an opportunity to

25   review the settlement agreement.  The court entered an Order (#41) directing Summerlin Hospital to

26   provide a copy of the Settlement Agreement and Release to counsel for Baxa, finding  fundamental

27   fairness and due process dictated that the defendant have an opportunity to examine the Agreement in

28   order to take a position concerning whether the settlement reached between the plaintiffs and

1  Summerlin Hospital was in good faith.  A protective order was entered precluding the parties from

2  disclosing the terms of the Settlement Agreement and Release for any purpose unrelated to Summerlin

3  Hospital's Motion to Intervene and For Determination of Good Faith Settlement, without further leave

4  of the court.  Finally, the order permitted Summerlin Hospital to file a copy of the Settlement

5  Agreement and Release under seal, but required submission of a memorandum supported by affidavit or

6  declaration that good cause exists to protect the information from public disclosure under the standards

7  articulated by the Ninth Circuit in Kamakama v. City and County of Honolulu, 447 F. 3d. 1172 (9th

8  Cir. 2006).

## DISCUSSION

10       A judicial determination that the settlement between the plaintiffs and Summerlin was made in

11  good faith releases the settling parties from contribution and equitable indemnity claims of  any non-

12  settling joint tortfeasors under N.R.S. 17.245 (1)(b).  The parties agree that the court has broad

13  discretion in determining the fairness and overall appropriateness of the proposed settlement.  See, Duk

14  v. MGM Grand Hotel, Inc., 320 F.3d 1052, 1060-1061 (9th Cir. 2003), citing, Velsicol Chem. v.

15  Davidson, 107 Nev. 356, 811 P. 2d 561, 563 (Nev. 1991) ( per curium).  The parties also agree that this

16  court should apply the factors identified by this court in In Re MGM Grand Hotel Fire Litigation, 570 F.

17  Supp. 913, 927 (D. Nev. 1983), in determining whether the settlement between the plaintiffs and

18  Summerlin Hospital was reached in good faith.  These factors include: 1) the amount paid in settlement,

19  2) the allocation of the settlement proceeds among the plaintiffs, 3) the insurance policy limits of the

20  settling party, 4) the financial condition of the settling party, and 5) the existence of collusion, fraud, or

21  tortuous conduct aimed to injure the interests of non-settling defendants.

22       In Veslicol, the Nevada Supreme Court held that the determination of whether a settlement was

23  reached in good faith "should be left to the discretion of the trial court based upon all relevant factors

24  available, and that in the absence of an abuse of that discretion, the trial court's findings should not be

25  disturbed."  Id.  In The Doctors Company v. Vincent, 120 Nev. 644, 651-652, 98 P. 3d. 681 (2004), the

26  Nevada Supreme Court found that the MGM factors adopted by this court "may be relevant to a district

27  court's determination of good faith", but were not the "exclusive criteria for determinations of good or

28  / / /

1    bad faith". Id.  The Nevada Supreme Court found that in addition to the MGM factors, a court deciding

2    whether a settlement was reached in good faith may

3              . . . assess the relative liability permutations of the particular contribution
             or indemnity action known to it, including the strengths and weaknesses
4              of the contribution or indemnity claims.  This standard of review vests the
             district court with considerable discretion.

5

6    Id.

7                                           **ANALYSIS**

8         Summerlin has now disclosed the amount of the settlement it paid to the plaintiffs and the terms

9    of the Settlement Agreement. The settlement amount has been equally allocated between the plaintiffs

10   who are the parents of baby Alyssa.  Summerlin has also disclosed that it is self-insured for this loss,

11   but had an excess liability indemnity policy in effect at the time of Alyssa's death.  The excess policy

12   was produced to counsel for Baxa and is attached as Exhibit "B" to Summerlin's Supplement to its

13   Motion to Intervene (#47).  The declaration sheet of the excess liability policy reflects a first layer per

14   occurrence limit of "90% part of $5 million" with an annual aggregate of $4.5 million.  Prior to the

15   hearing, counsel for Baxa disclosed that Baxa and the plaintiffs had reached a settlement during a

16   private mediation.  During the hearing, the amount of the settlement between Baxa and the plaintiffs

17   was disclosed on the record.  Baxa opposes Summerlin's motion for determination of good faith, but

18   has not opposed Summerlin's request to intervene in this action.  Although Baxa has reached a

19   settlement with the plaintiffs, it intends to pursue its contribution and indemnity rights against

20   Summerlin.  Baxa asserts that it had a contractual relationship with Summerlin Hospital which

21   obligated Summerlin to obtain insurance protecting Baxa from claims such as this lawsuit which arise

22   from Summerlin's use of the Baxa compounder.  Baxa, therefore, intends to pursue its breach of

23   contract remedies, and correctly points out that N.R.S. 17.245 does not extinguish its breach of an

24   express or written contract claims against Summerlin Hospital.  However, Baxa asks that the court deny

25   Summerlin Hospital's motion for determination the settlement reached with the plaintiffs was in good

26   faith without prejudice until Baxa has more opportunity to conduct discovery.

27        Baxa also argues that the plaintiffs' settlement with Summerlin Hospital is not a good faith

28   settlement on a number of grounds.  First, both plaintiffs and Summerlin Hospital relied on the damages

1    cap in N.R.S. 41A.035 to evaluate plaintiffs' damages in reaching their settlement.  Baxa asserts that

2    the applicability of the statutory damages cap to this case is uncertain because the statute only applies to

3    professional negligence actions, and plaintiffs asserted negligent hiring and negligent training claims

4    against the hospital which may not be covered by the statute.  Second, Baxa argues that the N.R.S.

5    41A.017 which defines who is a provider of health care for purposes of N.R.S. 41A.035 does not

6    mention pharmacists or pharmacy technicians.  Baxa concedes that Summerlin Hospital's pharmacists

7    and pharmacy technicians "might qualify" as employees of a hospital for purposes of the damages cap

8    limitation, but asserts that this interpretation of the statute would cover almost any employee of a

9    hospital, including for example, security guards and janitors.  Third, Baxa argues that it is unclear

10   whether the Nevada medical malpractice damages cap applies to these plaintiffs because arguably both

11   parents and the estate of baby Alyssa each qualify as an injured plaintiff for purposes of the cap.  If so,

12   Summerlin Hospital's damages would be capped at $1,050,000 (three times $350,000), which is less

13   than the amount of plaintiffs' settlement with Summerlin.  Finally, Baxa argues that the amount of

14   Summerlin Hospital's settlement with the plaintiffs was not adequate because Summerlin had

15   significant exposure for punitive damages, and punitive damages are not compensatory in nature and,

16   therefore, not capped by the provisions of N.R.S. 41A.035.

17          During oral argument, counsel for plaintiffs urged the court to find the settlement was reached in

18   good faith.  Counsel for plaintiffs has more than 25 years of litigation experience in the field of personal

19   injury and medical malpractice law.  She articulated the rationale for reaching the settlement with

20   Summerlin Hospital prior to filing suit, and how she evaluated the settlement value of this case.  In

21   response to the court's inquiry, she represented that between the two settlements reached with

22   Summerlin Hospital and Baxa, she believed her clients had been made whole for their legally

23   compensable claims.  She also explained her analysis of the provisions of N.R.S. 41A.035 which

24   established a $350,000 damages cap for non-economic compensatory damages in an action for

25   professional negligence against a provider of health care.  She indicated that she was familiar with the

26   legislative history and legislative intent behind the statute as she had served as a lobbyist on behalf of

27   doctors seeking the legislation.  Counsel for plaintiffs also pointed out during oral argument that she

28   had asserted claims against Baxa for strict products liability, failure to warn, and negligence and that

1  plaintiffs sought punitive damages against Baxa.  None of the plaintiffs' claims against Baxa are capped

2  by the provisions of N.R.S. 41A.035.  Finally, she represented that plaintiffs' economic damages were

3  either non-existent or nominal because the plaintiffs had personal insurance coverage.

4      Having reviewed  and considered the moving and responsive papers and the arguments of

5  counsel, the court finds that the settlement reached between the plaintiffs and Summerlin Hospital is a

6  good faith settlement for purposes for N.R.S. 17.245.  Without disclosing the specific amounts of the

7  settlement plaintiffs have reached with both Summerlin Hospital and Baxa, all parties agree that the

8  combined settlements fairly compensate the plaintiffs for their legally compensable losses.  In fact,

9  Baxa takes the position that the amount of Summerlin Hospital's settlement alone fairly compensates

10  the plaintiffs for their legally compensable losses.  (See, Supplement Response (#46) 7:1-5.)

11  Summerlin Hospital paid two-thirds of the total settlement, and Baxa paid one-third.  Baxa makes no

12  claim that the equal allocation of settlement proceeds among the plaintiffs is not equitable.

13      In evaluating the fairness and overall appropriateness of the proposed settlements, the court has

14  considered the extensive pre-filing investigation of this case, and the public hearings conducted by the

15  State Pharmacy Board concerning the acts and omissions of the hospital, pharmacy, and individuals

16  involved in the series of events which resulted in the death of baby Alyssa.  Counsel for all of the

17  parties involved in this litigation have extensive litigation experience in evaluating liability and

18  damages claims of this nature, and were well informed about the State Board of Pharmacy's Findings of

19  Fact and Conclusions of Law.  In fact, at a hearing conducted on the parties' proposed discovery plan

20  and scheduling order, counsel for the parties informed the court that the substantial investigation

21  conducted by the State Board of Pharmacy would narrow the focus and need for certain discovery.

22      Baby Alyssa was born prematurely at 26 weeks, weighing slightly over one pound and died

23  within three weeks of her birth.  The nature of her parents' compensatory damages claim are for the loss

24  of probable economic support to the family resulting from her death.  Although the plaintiffs were

25  optimistic about their daughter's prognosis, her premature birth and its implications about her future

26  health were factors counsel for plaintiffs took into account in evaluating plaintiffs' compensatory

27  damages.  Summerlin Hospital's settlement  far exceeded the $350,000 damages cap for non-economic

28  compensatory damages.  Although counsel for Baxa argued that it is uncertain whether the damages cap

1  can be "stacked" to provide a $350,000 compensatory recovery per plaintiff, counsel for plaintiffs

2  analyzed the cap differently. Counsel for plaintiffs was intimately familiar with the legislative process

3  which resulted in enacting the non-economic compensatory damages cap in professional negligence

4  actions as she served as a lobbyist for doctors who successfully obtained this legislation.  She, therefore,

5  has more expertise than most lawyers concerning the legislative process, legislative intent, and

6  applicability of the statutory cap on damages as they apply to her clients in this case.

7        Summerlin Hospital is self-insured for this loss, and the combined Summerlin and Baxa

8  settlements with the plaintiffs are well below the excess liability insurance policy limits.  Summerlin

9  Hospital did not offer any evidence of its financial condition.  However, all counsel believe the

10  plaintiffs have been fairly compensated by the combined settlements paid by Summerlin Hospital and

11  Baxa.  In fact, counsel for Baxa asserted in its Supplemental Response (#46) that Baxa did not believe

12  the plaintiffs were entitled to recover more than the amount they received in settlement with

13  Summerlin, but agreed to settle with the plaintiffs because it was aware of cases involving baby

14  overdoses that resulted in jury awards as high as $24 million.  Baxa, therefore, agreed to settle with the

15  plaintiffs notwithstanding its position that the plaintiffs had already been fully compensated by the

16  recovery from Summerlin Hospital because of Baxa's own potential multi-million dollar exposure to

17  the plaintiffs.  Baxa's argument that Summerlin Hospital's settlement alone fairly compensated the

18  plaintiffs belies any suggestion of collusion, fraud, or tortious conduct aimed at injuring Baxa.  Finally,

19  plaintiffs' claims against Baxa for strict products liability, failure to warn, and negligence are clearly

20  not statutorily capped.

21        Under all of these circumstances, the court finds counsel for the parties had more than adequate

22  information to evaluate the strengths and weaknesses of their respective liability and damages claims

23  and defenses, and that the settlement reached between the plaintiffs and Summerlin Hospital was a

24  good faith settlement.  Specifically, the court finds that the amount Summerlin Hospital paid in

25  settlement to the plaintiffs was fair, and that the equal allocation between the plaintiff parents was

26  appropriate.  Summerlin Hospital did not have a primary insurance policy applicable to this law, was

27  self-insured, and settled well below its excess policy insurance limits.  Therefore, the lack of

28  information concerning Summerlin Hospital's financial condition does not militate against a finding of

1   good faith.  Finally, now that the amount in terms of the plaintiffs' settlement with Summerlin Hospital

2   have been disclosed, there is nothing in the record to support a finding of the existence of collusion,

3   fraud, or tortious conduct aimed at injuring the interests of Baxa.  In fact, Baxa's position that the

4   plaintiffs were fully compensated by the amount of Summerlin Hospital's settlement alone belies the

5   suggestion of collusion, fraud, or tortuous conduct designed to injure Baxa as Baxa concedes it settled

6   with plaintiffs to avoid its own potential multi-million dollar exposure to the plaintiffs.

7                                                  **CONCLUSION**

8          Applying the MGM Grand Hotel factors and having considered the fairness and overall

9   appropriateness of the settlement between Summerlin Hospital and the plaintiffs, the court has

10  exercised its broad discretion and determined the settlement was reached in good faith.  Summerlin

11  Hospital's good faith settlement with the plaintiffs, therefore, discharges the settling parties from all

12  liability for contribution and for equitable indemnity to any other joint tortfeasor by operation of N.R.S.

13  17.245(1)(b).  The determination that the settlement was reached in good faith does not, however,

14  preclude Baxa from pursuing any rights expressly provided for in a written agreement.  See,  N.R.S.

15  17.245(2).

16         For all of the foregoing reasons,

17         **IT IS ORDERED** Summerlin Hospital's Motion to Intervene and For Determination of Good

18  Faith Settlement (#23) is GRANTED.

19         Dated this 7th day of July, 2008.

20

21  _____

22  PEGGY A. LEEN
    UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

                                                      8