UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

KATHLEEN SHINN, et al.,

                      Plaintiffs,

vs.

BAXA CORPORATION, et al.,

                      Defendants.

Case No. 2:07-cv-01648-JCM-PAL

**ORDER**

(M/Intervene - #23)

The court conducted a hearing on Summerlin Hospital Medical Center's Motion to Intervene and For Determination of Good Faith Settlement (#23) on July 1, 2008. Kerry L. Earley, Esq., appeared on behalf of the plaintiffs; Nicholas Wieczorek, Esq., appeared on behalf of defendant Baxa; and Ken Webster, Esq., appeared on behalf of the movant, Summerlin Hospital. The court considered the motion, the Opposition of defendant McKesson (#24)[1], defendant Baxa's Response (#39), Plaintiffs' Joinders (##40, 48), Summerlin's Memorandum of Good Cause (#43), Baxa Corporation's Supplemental Response (#46), Summerlin's Supplement (#47), and the arguments of counsel at the hearing.

**BACKGROUND**

This a wrongful death action arising out of the death plaintiffs' infant who was born October 19, 2006 and treated at Summerlin Hospital. Baby Alyssa died at Summerlin Hospital on November 9, 2006. The infant was administered a lethal dose of zinc intravenously through a Total Parental Nutrition ("TPN") which provided her nutrition. Plaintiffs assert their child received 1000 times the

/ / /

---

[1] On April 17, 2007, the District Judge approved a stipulation dismissing McKesson Corporation with prejudice (#17).

appropriate dose and was slowly poisoned to death. Her death and the circumstances which caused it received intense public scrutiny and publicity.

The Nevada State Board of Pharmacy conducted public hearings and took testimony from Pamela Goff, Nazanin Rezvan, Asia Cornelius, Jackson Yu, and Gretta Woodington, Summerlin Hospital employees who were involved in processing and administering the doctor's order for the zinc. The State Board's hearings were widely publicized, and portions of the hearings were televised live. At the conclusion of the hearings, the Pharmacy Board made findings of fact and conclusions of law, finding that Ms. Goff, Ms. Cornelius, Ms. Rezvan, and Mr. Yu had violated certain provisions of the Nevada Revised Statutes and the Nevada Administrative Code. The Board also found the Summerlin Pharmacy violated Nevada Revised Statute and Nevada Administrative Code in establishing and enforcing the policies and procedures and in owning and operating the pharmacy in which all of the Board's factual allegations and legal violations occurred. (See Findings of Fact and Conclusions of Law of the Nevada State Board of Pharmacy, attached as exhibit "A" to Baxa's Response (#39)).

Plaintiffs sued defendant Baxa in this lawsuit asserting it developed, researched, designed, manufactured, and supplied the compounding device and related component software which delivered the lethal dose of zinc to the plaintiffs' infant, Alyssa Shinn. Plaintiffs reached a confidential settlement with Summerlin Hospital prior to filing this lawsuit. Summerlin seeks to intervene for the limited purpose of obtaining a determination that its settlement with the plaintiffs was entered in good faith for purposes of extinguishing contribution and equitable indemnity claims pursuant to the provisions of N.R.S. 17.245.

Summerlin Hospital refused to produce a copy of its Settlement Agreement with the plaintiffs to counsel for Baxa, and counsel for Baxa, therefore, sought the court's assistance in compelling a copy of the Agreement. Counsel for Baxa indicated that the defendant may or may not have an opposition to the motion by Summerlin Hospital, but was unable to evaluate its options without an opportunity to review the settlement agreement. The court entered an Order (#41) directing Summerlin Hospital to provide a copy of the Settlement Agreement and Release to counsel for Baxa, finding fundamental fairness and due process dictated that the defendant have an opportunity to examine the Agreement in order to take a position concerning whether the settlement reached between the plaintiffs and

1   Summerlin Hospital was in good faith.  A protective order was entered precluding the parties from
2   disclosing the terms of the Settlement Agreement and Release for any purpose unrelated to Summerlin
3   Hospital's Motion to Intervene and For Determination of Good Faith Settlement, without further leave
4   of the court.  Finally, the order permitted Summerlin Hospital to file a copy of the Settlement
5   Agreement and Release under seal, but required submission of a memorandum supported by affidavit or
6   declaration that good cause exists to protect the information from public disclosure under the standards
7   articulated by the Ninth Circuit in <u>Kamakama v. City and County of Honolulu</u>, 447 F. 3d. 1172 (9th
8   Cir. 2006).

## DISCUSSION

10   A judicial determination that the settlement between the plaintiffs and Summerlin was made in
11   good faith releases the settling parties from contribution and equitable indemnity claims of any non-
12   settling joint tortfeasors under N.R.S. 17.245 (1)(b).  The parties agree that the court has broad
13   discretion in determining the fairness and overall appropriateness of the proposed settlement.  See, <u>Duk
14   v. MGM Grand Hotel, Inc.</u>, 320 F.3d 1052, 1060-1061 (9th Cir. 2003), citing, <u>Velsicol Chem. v.
15   Davidson</u>, 107 Nev. 356, 811 P. 2d 561, 563 (Nev. 1991) ( per curium).  The parties also agree that this
16   court should apply the factors identified by this court in <u>In Re MGM Grand Hotel Fire Litigation</u>, 570 F.
17   Supp. 913, 927 (D. Nev. 1983), in determining whether the settlement between the plaintiffs and
18   Summerlin Hospital was reached in good faith.  These factors include: 1) the amount paid in settlement,
19   2) the allocation of the settlement proceeds among the plaintiffs, 3) the insurance policy limits of the
20   settling party, 4) the financial condition of the settling party, and 5) the existence of collusion, fraud, or
21   tortuous conduct aimed to injure the interests of non-settling defendants.
22   In <u>Veslicol</u>, the Nevada Supreme Court held that the determination of whether a settlement was
23   reached in good faith "should be left to the discretion of the trial court based upon all relevant factors
24   available, and that in the absence of an abuse of that discretion, the trial court's findings should not be
25   disturbed."  <u>Id</u>.  In <u>The Doctors Company v. Vincent</u>, 120 Nev. 644, 651-652, 98 P. 3d. 681 (2004), the
26   Nevada Supreme Court found that the <u>MGM</u> factors adopted by this court "may be relevant to a district
27   court's determination of good faith", but were not the "exclusive criteria for determinations of good or
28   / / /

1  bad faith". Id.  The Nevada Supreme Court found that in addition to the MGM factors, a court deciding
2  whether a settlement was reached in good faith may

> . . . assess the relative liability permutations of the particular contribution or indemnity action known to it, including the strengths and weaknesses of the contribution or indemnity claims.  This standard of review vests the district court with considerable discretion.

6  Id.

## ANALYSIS

Summerlin has now disclosed the amount of the settlement it paid to the plaintiffs and the terms of the Settlement Agreement. The settlement amount has been equally allocated between the plaintiffs who are the parents of baby Alyssa.  Summerlin has also disclosed that it is self-insured for this loss, but had an excess liability indemnity policy in effect at the time of Alyssa's death.  The excess policy was produced to counsel for Baxa and is attached as Exhibit "B" to Summerlin's Supplement to its Motion to Intervene (#47).  The declaration sheet of the excess liability policy reflects a first layer per occurrence limit of "90% part of $5 million" with an annual aggregate of $4.5 million.  Prior to the hearing, counsel for Baxa disclosed that Baxa and the plaintiffs had reached a settlement during a private mediation.  During the hearing, the amount of the settlement between Baxa and the plaintiffs was disclosed on the record.  Baxa opposes Summerlin's motion for determination of good faith, but has not opposed Summerlin's request to intervene in this action.  Although Baxa has reached a settlement with the plaintiffs, it intends to pursue its contribution and indemnity rights against Summerlin.  Baxa asserts that it had a contractual relationship with Summerlin Hospital which obligated Summerlin to obtain insurance protecting Baxa from claims such as this lawsuit which arise from Summerlin's use of the Baxa compounder.  Baxa, therefore, intends to pursue its breach of contract remedies, and correctly points out that N.R.S. 17.245 does not extinguish its breach of an express or written contract claims against Summerlin Hospital.  However, Baxa asks that the court deny Summerlin Hospital's motion for determination the settlement reached with the plaintiffs was in good faith without prejudice until Baxa has more opportunity to conduct discovery.

Baxa also argues that the plaintiffs' settlement with Summerlin Hospital is not a good faith settlement on a number of grounds.  First, both plaintiffs and Summerlin Hospital relied on the damages

cap in N.R.S. 41A.035 to evaluate plaintiffs' damages in reaching their settlement. Baxa asserts that the applicability of the statutory damages cap to this case is uncertain because the statute only applies to professional negligence actions, and plaintiffs asserted negligent hiring and negligent training claims against the hospital which may not be covered by the statute. Second, Baxa argues that the N.R.S. 41A.017 which defines who is a provider of health care for purposes of N.R.S. 41A.035 does not mention pharmacists or pharmacy technicians. Baxa concedes that Summerlin Hospital's pharmacists and pharmacy technicians "might qualify" as employees of a hospital for purposes of the damages cap limitation, but asserts that this interpretation of the statute would cover almost any employee of a hospital, including for example, security guards and janitors. Third, Baxa argues that it is unclear whether the Nevada medical malpractice damages cap applies to these plaintiffs because arguably both parents and the estate of baby Alyssa each qualify as an injured plaintiff for purposes of the cap. If so, Summerlin Hospital's damages would be capped at $1,050,000 (three times $350,000), which is less than the amount of plaintiffs' settlement with Summerlin. Finally, Baxa argues that the amount of Summerlin Hospital's settlement with the plaintiffs was not adequate because Summerlin had significant exposure for punitive damages, and punitive damages are not compensatory in nature and, therefore, not capped by the provisions of N.R.S. 41A.035.

During oral argument, counsel for plaintiffs urged the court to find the settlement was reached in good faith. Counsel for plaintiffs has more than 25 years of litigation experience in the field of personal injury and medical malpractice law. She articulated the rationale for reaching the settlement with Summerlin Hospital prior to filing suit, and how she evaluated the settlement value of this case. In response to the court's inquiry, she represented that between the two settlements reached with Summerlin Hospital and Baxa, she believed her clients had been made whole for their legally compensable claims. She also explained her analysis of the provisions of N.R.S. 41A.035 which established a $350,000 damages cap for non-economic compensatory damages in an action for professional negligence against a provider of health care. She indicated that she was familiar with the legislative history and legislative intent behind the statute as she had served as a lobbyist on behalf of doctors seeking the legislation. Counsel for plaintiffs also pointed out during oral argument that she had asserted claims against Baxa for strict products liability, failure to warn, and negligence and that

1 plaintiffs sought punitive damages against Baxa.  None of the plaintiffs' claims against Baxa are capped
2 by the provisions of N.R.S. 41A.035.  Finally, she represented that plaintiffs' economic damages were
3 either non-existent or nominal because the plaintiffs had personal insurance coverage.

4     Having reviewed and considered the moving and responsive papers and the arguments of
5 counsel, the court finds that the settlement reached between the plaintiffs and Summerlin Hospital is a
6 good faith settlement for purposes for N.R.S. 17.245.  Without disclosing the specific amounts of the
7 settlement plaintiffs have reached with both Summerlin Hospital and Baxa, all parties agree that the
8 combined settlements fairly compensate the plaintiffs for their legally compensable losses.  In fact,
9 Baxa takes the position that the amount of Summerlin Hospital's settlement alone fairly compensates
10 the plaintiffs for their legally compensable losses.  (See, Supplement Response (#46) 7:1-5.)
11 Summerlin Hospital paid two-thirds of the total settlement, and Baxa paid one-third.  Baxa makes no
12 claim that the equal allocation of settlement proceeds among the plaintiffs is not equitable.

13     In evaluating the fairness and overall appropriateness of the proposed settlements, the court has
14 considered the extensive pre-filing investigation of this case, and the public hearings conducted by the
15 State Pharmacy Board concerning the acts and omissions of the hospital, pharmacy, and individuals
16 involved in the series of events which resulted in the death of baby Alyssa.  Counsel for all of the
17 parties involved in this litigation have extensive litigation experience in evaluating liability and
18 damages claims of this nature, and were well informed about the State Board of Pharmacy's Findings of
19 Fact and Conclusions of Law.  In fact, at a hearing conducted on the parties' proposed discovery plan
20 and scheduling order, counsel for the parties informed the court that the substantial investigation
21 conducted by the State Board of Pharmacy would narrow the focus and need for certain discovery.

22     Baby Alyssa was born prematurely at 26 weeks, weighing slightly over one pound and died
23 within three weeks of her birth.  The nature of her parents' compensatory damages claim are for the loss
24 of probable economic support to the family resulting from her death.  Although the plaintiffs were
25 optimistic about their daughter's prognosis, her premature birth and its implications about her future
26 health were factors counsel for plaintiffs took into account in evaluating plaintiffs' compensatory
27 damages.  Summerlin Hospital's settlement far exceeded the $350,000 damages cap for non-economic
28 compensatory damages.  Although counsel for Baxa argued that it is uncertain whether the damages cap

1  can be "stacked" to provide a $350,000 compensatory recovery per plaintiff, counsel for plaintiffs
2  analyzed the cap differently. Counsel for plaintiffs was intimately familiar with the legislative process
3  which resulted in enacting the non-economic compensatory damages cap in professional negligence
4  actions as she served as a lobbyist for doctors who successfully obtained this legislation.  She, therefore,
5  has more expertise than most lawyers concerning the legislative process, legislative intent, and
6  applicability of the statutory cap on damages as they apply to her clients in this case.

7       Summerlin Hospital is self-insured for this loss, and the combined Summerlin and Baxa
8  settlements with the plaintiffs are well below the excess liability insurance policy limits.  Summerlin
9  Hospital did not offer any evidence of its financial condition.  However, all counsel believe the
10 plaintiffs have been fairly compensated by the combined settlements paid by Summerlin Hospital and
11 Baxa.  In fact, counsel for Baxa asserted in its Supplemental Response (#46) that Baxa did not believe
12 the plaintiffs were entitled to recover more than the amount they received in settlement with
13 Summerlin, but agreed to settle with the plaintiffs because it was aware of cases involving baby
14 overdoses that resulted in jury awards as high as $24 million.  Baxa, therefore, agreed to settle with the
15 plaintiffs notwithstanding its position that the plaintiffs had already been fully compensated by the
16 recovery from Summerlin Hospital because of Baxa's own potential multi-million dollar exposure to
17 the plaintiffs.  Baxa's argument that Summerlin Hospital's settlement alone fairly compensated the
18 plaintiffs belies any suggestion of collusion, fraud, or tortious conduct aimed at injuring Baxa.  Finally,
19 plaintiffs' claims against Baxa for strict products liability, failure to warn, and negligence are clearly
20 not statutorily capped.

21      Under all of these circumstances, the court finds counsel for the parties had more than adequate
22 information to evaluate the strengths and weaknesses of their respective liability and damages claims
23 and defenses, and that the settlement reached between the plaintiffs and Summerlin Hospital was a
24 good faith settlement.  Specifically, the court finds that the amount Summerlin Hospital paid in
25 settlement to the plaintiffs was fair, and that the equal allocation between the plaintiff parents was
26 appropriate.  Summerlin Hospital did not have a primary insurance policy applicable to this law, was
27 self-insured, and settled well below its excess policy insurance limits.  Therefore, the lack of
28 information concerning Summerlin Hospital's financial condition does not militate against a finding of

good faith.  Finally, now that the amount in terms of the plaintiffs' settlement with Summerlin Hospital have been disclosed, there is nothing in the record to support a finding of the existence of collusion, fraud, or tortious conduct aimed at injuring the interests of Baxa.  In fact, Baxa's position that the plaintiffs were fully compensated by the amount of Summerlin Hospital's settlement alone belies the suggestion of collusion, fraud, or tortuous conduct designed to injure Baxa as Baxa concedes it settled with plaintiffs to avoid its own potential multi-million dollar exposure to the plaintiffs.

## CONCLUSION

Applying the MGM Grand Hotel factors and having considered the fairness and overall appropriateness of the settlement between Summerlin Hospital and the plaintiffs, the court has exercised its broad discretion and determined the settlement was reached in good faith.  Summerlin Hospital's good faith settlement with the plaintiffs, therefore, discharges the settling parties from all liability for contribution and for equitable indemnity to any other joint tortfeasor by operation of N.R.S. 17.245(1)(b).  The determination that the settlement was reached in good faith does not, however, preclude Baxa from pursuing any rights expressly provided for in a written agreement.  See, N.R.S. 17.245(2).

For all of the foregoing reasons,

**IT IS ORDERED** Summerlin Hospital's Motion to Intervene and For Determination of Good Faith Settlement (#23) is GRANTED.

Dated this 7th day of July, 2008.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE