1
2
3
4                   **UNITED STATES DISTRICT COURT**
5                        **DISTRICT OF NEVADA**
6
7   KATHLEEN SHINN and RICHARD SHINN, *et al.*, )
                                              )
8                          Plaintiffs,        )   Case No. 2:07-cv-01648-JCM-PAL
                                              )
9   vs.                                       )            **ORDER**
                                              )
10  BAXA CORPORATION, *et al.,*               )   (Mot/Compel - Dkt. #112)
                                              )
11                         Defendants.        )
    _____ _____ )
12

13          Before the court is a Motion to Compel Production of Documents (Dkt. #112) filed by Cross-

14  Defendants Summerlin Hospital Medical Center, LLC, Summerlin Medical Center, LP, and UHS

15  Holding Company, Inc., ("the Summerlin Defendants").  The court has considered the motion,

16  Claimant/Counterdefendant Baxa's Opposition (Dkt. #115), the Summerlin Defendants' Reply (Dkt.

17  #118) and the arguments of counsel at a hearing conducted March 8, 2011.

18                           **BACKGROUND**

19          The complaint in this case was filed in state court and removed (Dkt. #1) December 10, 2007.  It

20  was initiated as an action by the parents of an infant born on October 19, 2006 who was treated at

21  Summerlin Hospital.  Baby Alyssa died at Summerlin Hospital November 9, 2006.  The infant was

22  administered a lethal dose of zinc intravenously through a Total Parental Nutrition ("TPN") device

23  which provided her nutrition.  The Plaintiffs settled their claims against Summerlin Hospital prior to

24  filing suit and filed a complaint against Baxa.  In an Order entered July 7, 2008 (Dkt. #5) the

25  undersigned granted Summerlin Hospital's Motion to Intervene and For Good Faith Settlement (Dkt.

26  #23), finding the settlement reached was a good-faith settlement for purposes of NRS 17.245(1)(b) and

27  therefore, discharged the settling parties from all liability for contribution and equitable indemnity, but

28  did not preclude Baxa from pursing any rights expressly provided for in a written agreement.  See NRS

1    17.245(2).  The Shinns settled with Baxa shortly before the hearing on Summerlin's motion to

2    intervene.  Baxa is now pursuing contractual indemnity claims against the Summerlin Defendants.

3        Counsel for Baxa tendered its defense of the underlying wrongful death action to Summerlin

4    Hospital December 6, 2007.  Baxa claims Summerlin Hospital was contractually required to indemnify

5    and defend it in the underlying wrongful death action, pursuant to a Baxa MicroMacro 23 Compounder

6    and Supplies Agreement dated June 27, 2003 and a Baxa Extacta-Mix 2400 Compounder and Supplies

7    Agreement dated August 23, 2007.  Summerlin Hospital refused to accept the tender of defense or

8    indemnify Baxa because it had a $1,000,000.00 per claim deductible on its insurance.  Baxa made

9    demands on the Summerlin Defendants to reimburse it for the settlement reached with the Shinns.

10   However the Summerlin Defendants disclaimed any responsibility to reimburse Baxa for the settlement

11   amount.  As a result, Baxa filed a motion for leave to file a crossclaim against the Summerlin

12   Defendants December 22, 2008 (Dkt. #64), which was granted by the District Judge in an Order entered

13   February 6, 2009 (Dkt. #67).  In its crossclaim Baxa asserts claims for express contractual indemnity,

14   breach of contract, breach of the implied covenant of good faith and fair dealing and declaratory relief.

15   The Summerlin Defendants have asserted counterclaims against Baxa for breach of contract, breach of

16   warranty, negligence, and strict liability.

17       The current motion involves a discovery dispute concerning a request for production of

18   documents served by the Summerlin Defendants on Baxa June 1, 2010.  The Summerlin Defendants

19   seek an order compelling Baxa to produce documents responsive to Requests No. 1 - 6[1] which seek

20   documents related to the underlying Shinn v. Baxa action, including documents involving Baxa's

21   assessment, defense, and strategy.  Baxa served responses July 20, 2010, objecting to each of these

22   requests on various grounds.  Specifically, it objected to documents responsive to Request Nos. 1-5, and

23   16 on the grounds they were protected by the attorney-client privilege or work-product doctrine.

24       The Summerlin Defendants argue that Baxa has put at issue the reasonableness and necessity of

25   the settlement it reached with the Shinns, and has therefore waived its right to assert privilege over any

27   _____

28   [1]The motion refers to the disputed discovery Requests 1 - 6 on page 5.  However, on page 6, the
     motion indicates Baxa objected to producing documents responsive to Requests 1 - 5 and 16.

1    settlement documents, and all documents and evidence related to its defense of the Shinn Plaintiffs'

2    wrongful death action.  The Parties exchanged correspondence in an effort to resolve this dispute

3    without court intervention.  On September 10, 2010 Baxa served  Supplemental Responses to

4    Defendants' First Request for Production.  Baxa produced correspondence between its counsel and the

5    Shinn Plaintiffs' counsel responsive to Request No. 1, but continued to withhold documents responsive

6    to Requests No. 2-5, and 16.  The deposition of Baxa's corporate representative, Perry Crumbaker, was

7    taken January 11, 2011.  Counsel for the Summerlin Defendants sought to question Mr. Crumbaker

8    about Baxa's analysis, strategy, and decision to settle the Shinn v. Baxa action to obtain information

9    concerning Baxa's claim for indemnity.  However, counsel for Baxa refused to allow Mr. Crumbaker to

10   answer questions regarding Baxa's understanding of its liability to the Shinns, its decision to participate

11   in a mediation with the Shinns or its decision to settle with the Shinns. The Summerlin Defendants

12   claim the parties engaged in numerous meet and confer sessions to attempt to resolve their remaining

13   disputes without success.

14        The Summerlin Defendants assert the documents are relevant and discoverable within the

15   meaning the of Fed. R. Civ. P. 26(b)(1).  The Summerlin Defendants also argue that in this federal

16   diversity action, Nevada State law on privilege applies, citing Fed. R. Evid. 501.  The Summerlin

17   Defendants dispute the documents are privileged.  However, even if the documents would otherwise be

18   privileged, the Summerlin Defendants assert the at-issue doctrine operates as a waiver of existing

19   privilege protections, because by filing a claim against the Summerlin Defendants for indemnity, Baxa

20   has put at issue the reasonableness of its settlement with the Shinns.

21        The Summerlin Defendants argue that under Nevada law the party seeking indemnity is required

22   to establish that it was legally liable to the party with whom the settlement was made, and that the

23   settlement itself was reasonable, citing *Land Resources Development v. Kaiser Aetna*, 100 Nev. 29, 37,

24   676 P. 2d 235, (1984).  The Summerlin Defendants rely on a Washington appellate case which

25   identified the factors a court may consider in determining whether a settlement was reasonable.  *See*

26   *Chaussee v. Maryland Cas. Co.,* 60 Wash. App 504, 803 P.2d 1339 (Wash. App Div. 1, 1991).  The

27   decision outlined many factors the court may consider including: (1) the releasing person's damages;

28   (2) the merits of the releasing person's liability theory; (3) the merits of the released person's defense

1   theory; (4) the released person's relative fault; (5) the risk and expenses of continued litigation; (6) the

2   released person's ability to pay; (7) any evidence of bad faith, collusion, or fraud; (8) the extent of the

3   releasing person's investigation and preparation of the case; and (9) the interest of the parties not being

4   released.  *Id*.  Thus, all documents related to Baxa's analysis of its potential liability to the Shinns,

5   especially those prepared in preparation for mediation of the dispute, as well as the advice and case

6   analysis of counsel are at issue, and Baxa's lawsuit has impliedly waived any privileged that might

7   otherwise apply.  The Summerlin Defendants rely on the Nevada Supreme Court articulation of the at-

8   issue waiver in *Wardleigh v. Second Judicial Dist.*, 111 Nev. 345, 891 P. 2d 1180 (1995).

9        In this indemnity action against the Summerlin Defendants Baxa takes the position it had no

10  liability to the Shinns, but has refused to explain why it settled with them.  As a result, the Summerlin

11  Defendants request an order compelling the production of documents responsive to Request Nos. 2-5,

12  and 16 and entries Nos. 1-39 on Baxa's Privilege Document Log.

13       Baxa opposes the motion asserting the Summerlin Defendants have failed to comply with their

14  meet and confer obligations under Fed. R. Civ. P. 37(a)(1) and L.R. 26-7.  Specifically, Baxa claims the

15  Summerlin Defendants have not provided the certificate required by L.R. 26-7(b) or the meet and

16  confer obligations imposed by *Shufflemaster, Inc. v. Progressive Games, Inc.*, 170 F. R. D. 166 (D.

17  Nev. 1996).  Counsel for Baxa argues the Summerlin Defendants waited for six months after engaging

18  in initial meet and confer efforts and unilaterally filed this motion without further efforts to resolve the

19  dispute.

20       Baxa disputes that it has waived the attorney-client privilege and work-product doctrine with

21  respect to privileged documents because it has brought this indemnity action.  Baxa claims that the

22  Summerlin Defendants position is based on a "misapprehension of the case law regarding the

23  requirements that must be satisfied for a party to be entitled to indemnification."  Baxa disputes that it

24  is required to demonstrate that it is legally liable to the Shinns or that the settlement was reasonable

25  asserting the cases cited by the Summerlin Defendants are inapposite.  Baxa argues this case is

26  distinguishable from the Nevada Supreme Court's decision in *Land Resources Development v. Kaiser*

27  *Aetna* because in this case Baxa tendered defense of the underlying action to the Summerlin

28  Defendants, and the Summerlin Defendants refused to assume Baxa's defense and indemnify it.  Baxa

4

1   acknowledges that the *Land Resources* case does not expressly state there was a tender of defense,
2   however, it believes this must have occurred because of a jury instruction quoted by the Nevada
3   Supreme Court in the decision.  Baxa believes that the fact that the Summerlin Defendants rejected its
4   tender of defense is important because Ninth Circuit case law holds the party seeking indemnity for a
5   settlement it reached must only prove there was a *potential* for liability to prevail on an indemnity
6   claim.

7          Baxa also asserts it does not need to prove it was legally liable to the Shinns, or that the
8   settlement amount was reasonable because its claims are based on two written indemnification
9   agreements.  The June agreement between Baxa and Summerlin Hospital included a provision that
10  required Summerlin Hospital to maintain insurance covering bodily injury and property damage
11  resulting from Summerlin Hospital's use of the TPN equipment Baxa leased to it, and required Baxa to
12  be named as an additional insured on the policy.  This contractual provision, Baxa argues, "equates to
13  an indemnification provision pursuant to Colorado Statutes and a Colorado Appellate Court decision
14  holding that a liability insurance policy is a "species of indemnity contract".  (Baxa maintains Colorado
15  law applies to interpretation of the parties' June agreement because of a choice of law provision in it.)

16         Additionally, the parties' August agreement contains an indemnification clause that required
17  Summerlin Hospital to indemnify, defend and hold Baxa harmless against claims arising from
18  Summerlin Hospital's negligence.  Because the parties have express written indemnification agreements
19  Baxa maintains it is only required to establish *potential* liability to the Shinns to be entitled to
20  indemnification from the Summerlin Defendants.  Thus, Baxa has not placed its understanding of legal
21  liability to the Shinns or the reasonableness of the settlement it reached with the Shinns at issue, and
22  has not waived the attorney-client privilege or the work-product doctrine, and the motion to compel
23  should be denied.  Baxa maintains it will be able to demonstrate it was potentially liable to the Shinns
24  because they were sympathetic plaintiffs, the underlying action involved the death of an innocent
25  premature baby, there was wide-spread local and national media coverage of the investigations
26  conducted by the Pharmacy Board and Nursing Board, and the underlying action was set for a jury trial.

27         Baxa also contends that the Summerlin Defendants' motion is untimely because the Summerlin
28  Defendants waited until the last day of the discovery cutoff, six months after Baxa served its discovery

1    responses, to file the motion.  The Summerlin Defendants have known since July 2010 when Baxa

2    served its responses and engaged in telephonic dispute resolution conferences that Baxa would be

3    claiming privilege for the withheld documents.  In follow-up written correspondence in August 2010

4    Baxa reiterated its position.  Baxa served supplemental responses to Summerlin's Request of

5    Production in September 2010 and again maintained its objections and indicated it would not be

6    producing privileged documents.  Under these circumstances, Baxa argues the Summerlin Defendants

7    should have filed a motion to compel months earlier and that if the motion to compel is granted

8    additional discovery will be sought which will undoubtedly delay these proceedings to Baxa's

9    detriment.

10        Finally, Baxa contends the Summerlin Defendants have refused to provide Baxa with the same

11   type of information that they seek in this motion to compel.  During discovery Baxa requested that the

12   Summerlin Defendants provide documents and information concerning their investigations and analysis

13   of baby Alyssa's death, their assessment of their own liability to the Shinns, and their rationale for their

14   settlement with the Shinns.  Baxa also took a Rule 30(b)(6) deposition of the Summerlin Defendants

15   requesting the same type of information.  The Summerlin Defendants served Baxa with a response to

16   the Rule 30(b)(6) deposition notice refusing to respond to these inquiries.  The Summerlin Defendants

17   asserted the attorney-client privilege and work-product doctrine with respect to the deposition topics

18   seeking Summerlin Hospital's assessment of its potential liability to the claims of the parents of Alyssa

19   Shinn which resulted in the settlement of the Shinn family claims.  The Summerlin Defendants also

20   objected to deposition questioning of their Rule 30(b)(6) designees on these topics.

21        The Summerlin Defendants' reply reiterates arguments that documents withheld from

22   production and listed on Baxa's privilege log should be compelled to be produced because by seeking

23   indemnity for the settlement Baxa reached with the Shinns it has placed these documents at issue and

24   waived privilege protection.  The Summerlin Defendants dispute that language in the parties' written

25   Baxa MicroMacro TM Compounder and Supplies Agreement requiring it to maintain insurance

26   constitutes an agreement to indemnify.  The Summerlin Defendants argue that contractual language

27   requiring it to maintain general liability insurance naming Baxa as an additional insured did not require

28   it to defend Baxa in lawsuits filed against it.  Rather, it established a duty to *maintain* insurance.

6

1    Additionally, Baxa's legal argument is a "red herring" in this case because "in this case there was no

2    liability insurance policy issued by any Summerlin Defendant to Baxa."

3           The Summerlin Defendants also argue that the August 2007 agreement is "wholly irrelevant to

4    Baxa's claims for indemnity in this case."  Baxa's claim for indemnity arises under language in the

5    November 2003 agreement which was the contract in effect at the time of baby Alyssa's death in

6    November 2006.  Additionally, language in the August 2007 Agreement is substantially different from

7    language in the contract governing this case, which merely requires the Summerlin Defendants to

8    maintain insurance.  Thus, as the party seeking indemnity Baxa must prove both that it was legally

9    liable to the Shinns and that the amount of its settlement with them was reasonable.

10          The documents the Summerlin Defendants seek from Baxa directly reflect Baxa's analysis of

11   the Shinns' claims against it, its legal strategy in defending the Shinns' claims, its decision to mediate

12   with the Shinns, and its ultimate decision to settle with them.  Baxa has plainly put the documents the

13   Summerlin Defendants seek at issue.  Moreover, even if Baxa is only required to prove that it was

14   potentially liable to the Shinns the same documents put Baxa's potential liability at issue.

15          The Summerlin Defendants maintain they have complied with the requirements to submit a

16   certification required by Rul 37(a)(1) and L.R. 26-7 because on February 17, 2011 they filed a

17   Supplement to their Motion to Compel (Dkt. #116) which submits the certification required, which was

18   inadvertently omitted from the original.

19          Finally, the Summerlin Defendants argue their motion to compel was timely filed.  In *Gault v.*

20   *Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999), the court held that a motion to compel filed

21   within the discovery period would rarely be considered untimely.  The Summerlin Defendants filed this

22   motion to compel fifteen (15) days after Mr. Crumbaker's deposition was taken, and before the close of

23   discovery.  Additionally, it was filed as promptly as possible "in light of the discovery process".  The

24   motion to compel only ripened when, in addition to refusing to produce the documents in dispute,

25   Baxa's counsel instructed its Rule 30(b)(6) witness not to answer certain questions.  The motion was

26   filed approximately two weeks after the Rule 30(b)(6) deposition was taken.  The Summerlin

27   Defendants dispute that granting the motion to compel will result in any unnecessary delay because the

28   Summerlin Defendants have specifically identified the documents they seek from Baxa's privilege log.

1   If the motion to compel is granted, Baxa would need only to produce documents it has presumably

2   gathered and identified while preparing its privilege log.

3   **DISCUSSION**

4           Fed. R. Civ. P. 37(a)(1) permits a party to file a motion to compel disclosure of discovery.  It

5   provides in pertinent part:  "The motion must include a certification that the movant has in good faith

6   conferred or attempted to confer with the person or party failing to make disclosure or discovery in an

7   effort to obtain it without court action."

8           Local Rule 26-7(b) also provides:

9           Discovery motions will not be considered unless a statement of moving counsel is attached
            thereto certifying that, after personal consultation and sincere effort to do so, counsel have
10          been unable to resolve the matter without court intervention.

11          Fed. R. Civ. P. 37(a)(1) and Local Rule 26-7(b) serve several important purposes.  First, the

12  parties are required to meet and confer "to lessen the burden on the court and reduce the unnecessary

13  expenditure of resources by litigants, through promotion of informal, extra-judicial resolution of

14  discovery disputes."  *Nevada Power v. Monsanto*, 151 F.R.D. 118, 120 (D. Nev. 1993).  Second, the

15  meet-and-confer obligations "promote a frank exchange between counsel to resolve issues by agreement

16  or to at least narrow and focus the matters in controversy before judicial resolution is sought".  Id.  For

17  the meet-and-confer obligations to serve their purpose, it is essential "that parties treat the informal

18  negotiation process as a substitute for, and not simply a formal prerequisite to, judicial review of

19  discovery disputes."  Id.  To accomplish this requirement,

20          [t]he parties must present to each other the merits of their respective positions with the same
            candor, specificity, and support during informal negotiations as during the briefing of
21          discovery motions.  Only after all the cards have been laid on the table, and a party has
            meaningfully assessed the relative strengths and weaknesses of its position in light of all
22          available information, can there be "a sincere effort" to resolve the matter.

23  Id.  Judicial intervention should only occur when either informal negotiations have reached an impasse

24  on the substantive issues in dispute, or one party has acted in bad faith by either refusing to negotiate or

25  provide specific support for its claims.  Id.

26          The court should not consider a motion to compel unless the moving party provides a

27  certification of counsel which "accurately and specifically convey to the court who, where, how, and

28  when the respective parties attempted to personally resolve the discovery dispute."  *Shufflemaster, Inc.*

1  *v Progressive Games, Inc*. 170 F.R.D. 166, 170 (D. Nev. 1996).  Additionally, the moving party must

2  actually perform the obligation to confer or attempt to confer in good faith to resolve the discovery

3  dispute without court intervention.  Id.  To accomplish the underlying policy of Local Rule 26-7(b) and

4  Fed. R. Civ. P. 37(a)(1), the moving party must include more than a cursory statement that counsel have

5  been "unable to resolve the matter" and "must adequately set forth in the motion essential facts

6  sufficient to enable the court to pass a preliminary judgment on the adequacy and sincerity of the good

7  faith conferment between the parties."  Id. at 171.  A good faith attempt to resolve the discovery dispute

8  without court intervention involves more than "the perfunctory parroting of statutory language on the

9  certificate to secure court intervention," and requires "a genuine attempt to resolve the discovery

10  dispute through non-judicial means."  Id.

11      Having reviewed and considered the matter, the court finds that the Summerlin Defendants have

12  not met their meet and confer obligations.  The motion does not contain a certification of counsel as

13  required by LR 26-7(b).  Rather, the motion merely states that the "parties have previously conducted

14  multiple meets and confers (sic) regarding this discovery dispute."  The motion attaches letters

15  exchanged from counsel in July, August and early September 2010.  Baxa served a supplemental

16  response to  request number 1 providing documents Baxa exchanged with counsel for the Shinns on

17  September 10, 2010.  However, nothing in the motion indicates that there were any further efforts to

18  resolve this matter, and the motion was not filed until January 27, 2011, two weeks after the deposition

19  of Baxa's corporate representative and Rule 30(b)(6) designee on January 11, 2011.  LR 26-7(b) is

20  explicit: no discovery motion will be considered unless a statement of moving counsel is attached

21  certifying that after personal consultation and a sincere effort to do so, counsel have been unable to

22  resolve the matter without court action.

23      Having reviewed and considered the matter,

24      **IT IS ORDERED** The Summerlin Hospital Defendants' Motion to Compel (Dkt. #112) is

25  **DENIED**.

26      Dated this 21st day of June, 2011.

27

28  Peggy A. Leen
    United States Magistrate Judge

9